# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>DEVICE 6: A Samsung smart phone displaying IMEI:<br>359103254643140, located at the 223 S Second Street,<br>Albemarle, NC 28001. | )<br>)<br>)<br>)<br>)<br>)    Case No. 1:23mJ61 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-6

located in the _____ Middle _____ District of _____ North Carolina _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1); | Distribution of, and possession with intent to distribute, a controlled substance; |
| 21 U.S.C. § 843; and | Use of a communications facility to facilitate narcotics trafficking activities; and |
| 21 U.S.C. § 846. | Conspiracy to distribute and possess with intent to distribute controlled substance |

The application is based on these facts:

Please see affidavit attached hereto and incorported by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/ Charles A. Vill
_____
*Applicant's signature*

Charles A. Vill, Special Agent, DEA
_____
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 0/2/2023

_____
*Judge's signature*

City and state: Winston Salem, North Carolina

The Honorable Joi E. Peake, U.S. Magistrate Judge
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH SIX CELL PHONES LOCATED AT STANLY COUNTY SHERIFF'S OFFICE AT 223 S SECOND STREET, ALBEMARLE, NC 28001. | Case No. _1:23mJ61_ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Charles Vill, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3.      Your Affiant is a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation.  I have been

employed as a Special Agent with the DEA since August 2016. In September 2016, I attended the DEA Academy which consisted of 20 weeks of training in conducting federal drug trafficking investigations, handling confidential sources, conducting undercover operations, conducting mobile, static, foot and electronic surveillance, conducting tactical entry and vehicle arrest operations, defensive tactics, firearms, and additional aspects of conducting DEA lead investigations. I was assigned to the DEA Dayton Resident Office from April 2017 to January 2021. I have been assigned to the DEA Charlotte District Office since January 2021. Prior to employment with the DEA, I was a sworn Law Enforcement Officer of the State of Georgia who was charged with the duty to investigate criminal activity and enforce the criminal laws of the State of Georgia, and employed by the Cobb County Police Department from December 2011 to August 2016. During my employment with the Cobb County Police Department I was assigned to the Marietta-Cobb-Smyrna Organized Crime Task Force Intelligence Unit (MCS Intelligence). For approximately two years (2012-2014), I was assigned to the Cobb County Police Precinct 3 Morning Watch. I was then assigned to MCS Intelligence from April 2014 to August 2016. My duties included investigations of violations of the Georgia Controlled Substances Act, Murder for Hire, Extortion, Prostitution and Pimping, Human Trafficking, and Criminal Street Gangs.

4.     I have spoken to, and worked with, more experienced federal, state, and municipal narcotics agents and officers. During the course of my employment as a Special Agent, I have participated in several investigations of illicit drug trafficking organizations involving the use of confidential informants, electronic and physical surveillance, the analysis of telephone toll records, investigative interviews, and the service of search and arrest warrants. These include investigations of the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, the

2

conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

5.  I have been involved in the execution of numerous state and federal search warrants related to drug trafficking investigations. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by traffickers and trafficking organizations in their efforts to import, conceal, manufacture and distribute controlled substances including through the use of vehicles.

6.  My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following: (a) my own involvement in drug investigations and searches during my career as a law enforcement officer, as previously described; (b) what other agents and police officers have advised and related to me about the substance and results of their own drug investigations; and (c) other intelligence information provided through law enforcement channels.

7.  The conclusions and opinions set forth below are based on my experience and training as a Special Agent, my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation. The facts set forth in this Affidavit are known to him as a result of my personal participation in this investigation and through conversations with other Special Agents and investigators from the DEA as well as with other law enforcement personnel. The following is not an exhaustive recitation of the fact's agents/officers have learned during the course of this investigation, but are the facts that I believe sufficiently establish probable cause.

3

References to law enforcement personnel in this case will generally be referred to as "agents" or "agents/officers," unless specified by name and agency.

8.      The statements contained in this Affidavit are based in part on my personal observations, background, experience, and training, and also information provided by other law enforcement officers and other witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested Warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

9.      The property to be searched are as follows:

a. DEVICE 1: A gray Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone with a clear phone case. A photograph of Device 1 has been attached to this application for further identification.

b. DEVICE 2: A Samsung SM-F936U with serial number RFCT90N2XDZ marked on the exterior of the phone in a black case with a clip on it. A photograph of Device 2 has been attached to this application for further identification.

c. DEVICE 3: A dark gray Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone with no phone case. A photograph of Device 3 has been attached to this application for further identification.

d. DEVICE 4: An Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone in a gray case. A photograph of Device 4 has been attached to this application for further identification.

4

e. DEVICE 5: An Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone in a black case with neon green trim. A photograph of Device 5 has been attached to this application for further identification.

f. DEVICE 6: A Samsung smart phone displaying IMEI: 359103254643140. A photograph of Device 6 has been attached to this application for further identification.

10. The aforementioned device shall be referred to collectively as the "TARGET DEVICES." The TARGET DEVICES are currently located at the Stanly County Sherriff's Office in Albemarle, NC.

11. The applied-for warrant would authorize the forensic examination of the TARGET DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

12. The United States, including the DEA and U.S. Postal Inspection Service, is conducting a criminal investigation of Alan LITTLE regarding possible violations of 21 U.S.C. §§ 846 and 841 (possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same); and 21 U.S.C. § 843(b) (use of a communications facility to commit a felony).

13. This is an investigation into a drug trafficking organization (DTO) primarily distributing fentanyl powder and methamphetamine. Alan LITTLE is a member of this DTO, who resides in Troy and Biscoe, North Carolina. I submit, based on the facts below, that there is

probable cause to believe that the TARGET DEVICES, were used by Alan LITTLE, Michael BUTLER, Anthony BUTLER, Jkari COLLINS, Damien CLYBURN, and other co-conspirators both known and unknown.

14.     In December 2021, Agents conducted analysis of United States Postal Service (USPS) business records and identified a suspicious package mailed from the Los Angeles, California area that was in transit to 631 John Street, Biscoe, North Carolina. Agents observed that the sender and receiver names appeared to be fictitious. During this ongoing investigation this package was designated as Subject Package 1.

15.     On December 3, 2021, Honorable United States Magistrate Judge Joi Peake issued a federal search warrant (1:21MJ452) for Subject Package 1. Upon conducting a search of this package, a plastic container was found wrapped in wrapping paper. Within the plastic container was one brick shaped item wrapped in black and blue tape, with "BUNNY 21" written on the outside. A presumptive field test showed positive results for the presence of fentanyl. The overall weight of the fentanyl was approximately one kilogram.

### Information Regarding 209 Griffin Drive, Troy, NC

16.     Following seizure of Subject Package 1, Agents conducted a review of additional mailings from the greater Los Angeles area to North Carolina.  This included identifying packages which contained the same fictitious sender and recipient names, the use of the same sender addresses, and the review of USPS accounts associated with the mailing of Subject Package 1.  Upon doing so, Agents confirmed related packages were being mailed to 209 Griffin Drive, Troy, NC and 503 John Street, Biscoe, NC, which is in the immediate vicinity of 631 John Street, Biscoe, NC.  As an example of related packages, the USPIS found that a Priority Mail package (9505514249051299024064) was previously mailed to 631 John Street, Biscoe, NC

6

27209. A review of the label displayed the package was mailed from "Jenny Lopez 28103 Alominos Dr Santa Clarita CA 91350" and addressed to "Anthony Zavala 631 John St Biscoe NC 27209. An additional Priority Mail package (9505514249051299024071) was previously mailed to 209 Griffin Drive, Troy, NC. A review of this label image displayed the package was mailed from "Jenny Lopez 28103 Alaminos Dr Santa Clarita CA 91350" and addressed to 'Carlos Lopez 209 Griffin Dr Troy NC, 27371." A review of available databases determined these addresses were valid, but the names of "Jenny Lopez," "Anthony Zavala," and "Carlos Lopez" appeared to be fictitious and do not associate with any of the addresses. Furthermore, 209 Griffin Drive, Troy, NC is approximately eight miles from 631 John Street, Biscoe, NC. The investigative team determined that since June 2021 approximately thirteen (13) packages were delivered to 209 Griffin Drive; which originated from California. The weight of these packages was determined to be approximately ninety-eight (98) pounds.

17. In January, 2022 Agents conducted a review of inbound packages mailed to 209 Griffin Drive, Troy, NC; and 631 John Street, Biscoe, NC. Upon doing so Agents identified Subject Package 5, Subject Package 6, and Subject Package 7 were in transit to 209 Griffin Drive, Troy, NC. Additionally, Agents identified Subject Package 8 was in transit to 503 John Street, Biscoe, NC, which is in the immediate vicinity of 631 John Street. Subject Packages 5, 6, and 8 were mailed from Valencia, CA on January 15, 2022 at the same post office, and within eleven minutes of each other. Subject Package 7 was mailed from Bell Gardens, CA on January 19, 2022.

18. On January 24, 2022, at approximately 9:10 a.m. Agents established surveillance of 209 Griffin Drive, Troy, NC where subject packages 5, 6, and 7 were anticipated to be

delivered to, and 503 John Street, Biscoe, NC where subject package 8 was anticipated to be delivered to.

19.     At approximately 10:34 a.m. an unwitting mail carrier delivered Subject Packages 5 and 6 to 209 Griffin Drive. Upon delivery Agents observed Arivette LITTLE open the door and pull the packages inside. Arivette LITTLE has been identified to Agents as the aunt of Alan LITTLE, a member of this DTO.

20.     At approximately 10:39 a.m. an undercover officer (UC) acting as a USPS mail carrier delivered subject package 7. Upon delivery Arivette LITTLE opened the door and spoke briefly with the UC. The UC then left the area.

21.     At approximately 11:12 a.m. Agents observed a black male (UM) in a black hoodie and blue jeans arrive at 209 Griffin Drive in a Black Hyundai Equus displaying NC License plate JHH3193. A registration check showed JHH3193[1] was registered to a Dodge Charger to Michael BUTLER at 203 Hanover Street, Troy, NC.

22.     Upon arrival Agents observed the UM enter 209 Griffin Drive and return to the Equus carrying two of the Subject Packages. UM then reentered 209 Griffin Drive and returned to the Equus with the third Subject Package.

23.     As the UM carried the third Subject Package to the Equus, Agents observed Michael BUTLER exit 205 S Bilhen St, Troy, NC, which is in the same complex and one building West of 209 Griffin Drive. 205 S Bilhen St is the residence of Anthony BUTLER, Michael BUTLER's brother. Agents observed a black Tahoe displaying NC license plate

[1] When the registration check of JHH3193 was conducted on January 24, 2022, JHH3193 was registered to a Dodge Charger to Michael BUTLER at 203 Hanover Street, Troy, NC. However, registration of JHH3193 has since been transferred to a Hyundai Equus to Michael BUTLER at 203 Hanover Street, Troy, NC, showing a purchase date of January 7, 2022.

8

RDL9844 and leave in tandem with UM in the Equus. A registration check showed RDL9844 was registered to a black Chevrolet Tahoe to Michael BUTLER at 203 Hanover Street, Troy, NC.

24.     Agents then conducted mobile surveillance of the UM driving the Equus and Michael BUTLER driving the Tahoe and they drove surface streets in tandem from 209 Griffin Drive, NC until they arrived at 602 Martin Street, Biscoe NC at approximately 11:29 a.m. and pulled under a covered area. 602 Martin Street is in the same neighborhood, and only a few mobile homes away from 631 and 503 John Street.

25.     Affiant knows from training, experience, and knowledge of this case that drug traffickers who are transporting drug shipments will regularly transport the drugs in one vehicle while a second vehicle follows to oversee the drug shipment. For instance, in this case UM loaded the Subject Packages suspected to contain drugs into the Hyundai Equus, then drove from 209 Griffin Drive, Troy, NC to 602 Martin Street, Biscoe, NC while being followed by Michael BUTLER in the Chevrolet Tahoe.

26.     At approximately 11:37 a.m. an unwitting USPS mail carrier arrived in the area to deliver Subject Package 8 addressed to 503 John Street. The mail carrier then passed 503 John Street and delivered Subject Package 8 directly to 631 John Street, where an unknown dark sedan was sitting.

27.     At approximately 12:00 p.m. the dark sedan drove from 631 John Street and met with the Tahoe and Equus at 602 Martin Street. Due to tree cover and it being a congested area surveillance was not able to definitively determine if the dark colored car transported Subject Package 8 from 631 John to 602 Martin.

9

28. At approximately 12:04 p.m. surveillance observed the Tahoe leave the area of 602 Martin Street and leave the neighborhood. At approximately 12:12 p.m. Agents observed the Tahoe arrive at the Quick Check gas station located at 511 E Main Street Biscoe, NC and observed Michael BUTLER exit and enter the gas station. Agents observed Michael BUTLER was the sole occupant of the Tahoe.

29. At approximately 12:40 p.m. surveillance was terminated.

30. In late January, 2022 Agents again conducted a review of inbound packages mailed to 209 Griffin Drive, Troy, NC and identified Subject Package 9 mailed from Valencia, CA which weighed approximately thirty-one (31) pounds and was due to be delivered on or about February 1, 2022. Additionally Subject Package 9 was addressed to what appeared to be another fictitious name at 209 Griffin Drive.

31. On February 1, 2022, Agents obtained Subject Package 9 and observed it was heavily damaged in transit and the contents of the inside were visible without manipulating the package to see inside. Located within were two large objects wrapped in wrapping paper. Due to the damage of the package, Agents had to retape this package for delivery, which is consistent with USPS procedures for delivering packages that are damaged in transit.

32. At approximately 11:00 a.m. Agents established surveillance of 209 Griffin Drive, Troy, NC. At approximately 11:12 a.m. the same UC acting as a USPS mail courier delivered Subject Package 9 to the front porch. The UC then left the area.

33. At approximately 5:13 p.m. Agents observed Michael BUTLER arrive in the black Chevrolet Tahoe displaying North Carolina license plate RDL 9844. Upon arriving Michael BUTLER parked in front of 209 Griffin Drive and entered the residence. Agents

10

observed Michael BUTLER walk back to the Tahoe, access the driver's side door, and then return inside 209 Griffin Drive.

34.     At approximately 5:16 p.m. Agents observed Michael BUTLER exit 209 Griffin Drive carrying what appeared to be a heavy container wrapped in wrapping paper with Arivette LITTLE following behind carrying a smaller container wrapped in wrapping paper. Agents observed these containers were the same container observed inside Subject Package 9, detailed in paragraph 31 above. Agents observed Michael BUTLER load the larger container into the rear seat of the Tahoe, then obtain the smaller container from Arivette LITTLE and place it in the rear seat of the Tahoe.

35.     Agents then conducted mobile surveillance of Michael BUTLER driving the Tahoe as Michael BUTLER drove surface streets from 209 Griffin Drive, NC until Michael BUTLER arrived at 602 Martin Street, Biscoe NC at approximately 5:30 p.m.

36.     Upon arrival Agents observed Michael BUTLER exit the vehicle. Multiple vehicles were observed waiting in the driveway that were running and occupied. A large amount of vehicle traffic was observed arriving and departing from 602 Martin Street after Michael BUTLER arrived. This included a high volume of foot traffic going in and out an outbuilding located on the property.

37.     At approximately 6:15 p.m. Agents observed Michael BUTLER return to the Tahoe and access the rear passenger side. Agents then observed Michael BUTLER remove the smaller container from the rear seat and placed the container in the passenger side door of a black Mercedes sitting in the driveway occupied. Shortly after this occurred the sun set, and Agents lost visibility of 602 Martin Street. Surveillance was then terminated.

11

38.     Following the aforementioned surveillance, agents/officers conducted additional surveillance of the delivery of Subject Packages 8-12 on January 24, February 1, March 17, March 22, and May 6, 2022 at 209 Griffin Drive, Troy, NC. Each of those instances, agents/officers observed LITTLE or BUTLER arrive to pick up the package and transport it to 602 Martin Street, Biscoe, NC.

## Surveillance of 209 Griffin Drive, Troy, NC on June 6, 2022

39.     On June 6, 2022, agents/officers established surveillance at 209 Griffin Drive in anticipation of Subject Package 13 being delivered.

40.     At approximately 10:46 a.m., Subject Package 13 was delivered by an unwitting U.S. Postal carrier to 209 Griffin Drive, Troy, NC.

41.     At approximately 11:07 a.m., agents/officers observed Alan LITTLE arrive at 209 Griffin Drive in the Hyundai Equus. Agents observed Alan LITTLE knock on the door of the residence. At that time, agents/officers then observed Alan LITTLE take Subject Package 13 inside the residence and close the door.

42.     At approximately 11:11 a.m., agents/officers observed Alan LITTLE exit with several blue Food Lion grocery bags.

12





43.     Affiant knows through training, experience, and knowledge of this case that

methamphetamine is sold in pound quantities. Pound quantities of methamphetamine are

regularly referred to as burritos due to their cylindrical shape and size. When reviewing the photo

above affiant observed that Alan LITTLE appeared to be carrying three slightly see through blue

Food Lion grocery bags with several cylindrical burrito shaped objects that can be seen through

13

the bags. Affiants observed that these objects appear consistent with how pound quantities of methamphetamine are regularly packaged and distributed by drug traffickers.

44.     At approximately 11:12 a.m. Agents observed Alan LITTLE leave 209 Griffin Drive in the Equus. Agents conducted mobile surveillance of LITTLE as he drove surface streets from 209 Griffin Drive, Troy and arrived at 602 Martin Street at approximately 11:20 a.m. Upon arrival Agents observed LITTLE exit the Equus empty handed and walk through the covered parking area.

45.     At approximately 11:25 a.m. Agents observed LITTLE walk back to the driver's side of the Equus and an unknown black male (UM4) walk to the passenger side. Agents could see UM4 manipulating the blue bags that LITTLE left 209 Griffin Drive carrying. LITTLE and UM3 then walked back through the car port to the rear of the 602 Martin Street empty handed.

46.     At approximately 11:31 a.m. Agents observed LITTLE and UM3 return to the Equus and retrieve the blue grocery bags and walk them through the car port to the rear of the 602 Martin Street.

47.     A short while later, agents terminated surveillance at 602 Martin Street.

### Execution of North Carolina State Search Warrant at 602 Martin Street, Biscoe, NC on June 7, 2022

48.     On June 6, 2022, North Carolina State Superior court Judge Patrick Nadolski signed a search warrant for 602 Martin Street, Biscoe, NC 27209.

14

49.     On June 7, 2022, members of the Charlotte DO Tactical Diversion Squad (TDS), Montgomery County Sheriff's Office, Moore County Sheriff's Office, and North Carolina State Bureau of Investigation (NCSBI) executed a state search warrant at 602 Martin Street, Biscoe, NC.

50.     On that date, at approximately 8:00 a.m., agents/officers conducted a pre-enforcement briefing.

51.     At approximately 9:00 a.m., NCSBI Special Response Team (SRT) executed the search warrant by conducting knock and announce at 602 Martin Street, Biscoe, NC. NCSBI SRT agents surrounded the residence and called all occupants out. After a brief period of time, resident owner/renter Merissa WALL exited the residence with her cellular telephone in hand. Agents/officers took custody of WALL's cellular telephone. WALL was detained and placed into the back of a Montgomery County marked unit un-handcuffed.

52.     At that time, NCSBI SRT agents made entry into the residence and rendered it safe. Upon completion, tactical/investigative control was relinquished to the case agents.

53.     At approximately 9:35 a.m., agents/officers began to search the property. During a search of a Toyota Camry (NC Lic# RCY9559, R/O Keyara Ortisha JOHNSON at 282 House Church Rd., Jackson Springs, NC 27281) and Dodge Ram (NC Lic# JCV5903, R/O Sonia Georgina SOTO at 137 Tank Rd., Candor, NC 27229) located on the property agents/officers located and seized 10 firearms (5 Rifles, 4 handguns, 1 shotgun), one military style bazooka tube, one square block wrapped in blue tape and cellophane weighing 1,199.15 grams (suspected cocaine), one gallon size ziplock bag containing approximately 22 baggies of white powdery

15

substance weighing 666.94g (suspected cocaine), brown powdery substance in tied off clear baggies weighing 1,180.39 grams (suspected heroin), 17 bundles of crystal like substance wrapped in cellophane and one gallon ziplock bag containing 31 individual clear plastic bags containing crystal like substance weighing 9.75 kilograms (suspected methamphetamine), two glass jars containing green leafy substance weighing 2,060.90 grams (suspected marijuana), brown powder substance contained in clear Ziploc bags contained in clear Rubbermaid containers with red tops weighing 1,393.94 grams (suspected heroin), brown powder substance wrapped in two clear plastic bags weighing 34.93 grams (suspected heroin), three square blocks wrapped in cellophane, then wrapped in multicolored dot wrapping paper weighing 3,480.15 grams (suspected fentanyl), Blue "Food Lion" bags, orange wrapping, and cloth bag that drugs were located in, a working digital scale, and miscellaneous indicia with the name "Alan Little" printed on it.

## Surveillance of 503 and 631 John Street, Biscoe, NC on January 17, 2023

54.     On January 17, 2023, agents/officers established surveillance at 503 and 631 John Street, Biscoe, NC in anticipation of three subject packages (14, 15, and 16) scheduled to be delivered to 631 John Street the same date. Upon establishing surveillance agents/officers observed a Dodge Durango known to be utilized by Alan LITTLE parked in front of 503 John Street. Agents/officers observed that Alan LITTLE was sitting in the driver's seat.

55.     At approximately 10:49 a.m., Subject Packages 14, 15, and 16 were delivered by an unwitting U.S. Postal carrier to 631 John Street, Biscoe, NC.

16

56. At approximately 10:40 a.m., agents/officers observed as Jkari COLLINS, the son of Alan LITTLE, exited 503 John Street and sat in the front passenger seat of the Durango.

57. At approximately 10:51 a.m., agents/officers observed Damien CLYBURN walk to 631 John Street and retrieve Subject Packages 14, 15, and 16 from the front porch. CLYBURN then walked to the rear of 503 John Street and began opening the boxes. Agents/officers observed as CLYBURN opened each box CLYBURN retrieved a stack of neon green and orange hand towels from each box. All three boxes contained the same neon green and orange hand towels. CLYBURN then carried the stacks to the Durango, where Alan LITTLE and Jkari COLLINS were still sitting, and placed the stack on the rear passenger seat.

58. Agents/officers then observed as Jkari COLLINS leaned out and pointed while appearing to tell CLYBURN something. CLYBURN then returned to boxes, broke them down by cutting and tearing them, then placed the boxes into what appeared to be a burn pile.

59. At approximately 10:58 a.m., agents/officers observed Jkari COLLINS exit the front seat of the Durango and enter 503 John Street. Agents then observed CLYBURN return to the Durango. Upon opening the passenger door CLYBURN retrieved a wad of neon green and orange towels and put them in the trunk of the Durango. Agents/officers observed the neon green and orange towels were no longer neatly folded and were now in a pile. CLYBURN then returned and sat in the front passenger seat of the Durango.

60. At approximately 11:02 a.m., agents/officers observed Alan LITTLE and CLYBURN leave the area in the Durango. Agents/officers then conducted mobile surveillance of the Durango as Alan LITTLE and CLYBURN drove form Biscoe, NC to Troy, NC. Once Alan

17

LITTLE and CLYBURN arrived in Troy, Alan LITTLE began driving through tight neighborhoods. Alan LITTLE then started driving down streets he had already driven down, stopping abruptly, and making U-Turns in the street.

61.     Affiant knows based on training, experience and knowledge of this case that drug traffickers will regularly conduct counter surveillance techniques such as driving through tight neighborhoods, driving the same streets multiple times, stopping abruptly, and making U-Turns randomly. These techniques assist drug traffickers to identify if law enforcement is following them.

62.     Agents/officers ultimately observed Alan LITTLE stop on West Spring Street and reverse the Durango down Griffin Drive in Troy, NC. Agents/officers observed Alan LITTLE stop the Durango at the entrance to Griffin Drive which is a short apartment complex road that leads to several parking spots. Agents/officers lost visual of the Durango for approximately 8 to 10 seconds. Upon gaining visual of the Durango again, agents/officers observed that CLYBURN was out of the vehicle and walking through the apartment complex between the buildings for 209 Griffin Drive and 205 S Bilhen Street.

63.     Agents/officers observed Alan LITTLE then drive the Durango back down W Spring Street and to the McDonald's located at 322 Albemarle Road, Troy, NC, which was directly behind the building for 209 Griffin Drive. At the same time agents/officers observed CLYBURN walk through an opening in the fence line and meet Alan LITTLE at the Durango in the McDonald's parking lot and re enter the passenger seat of the Durango.

18

64.     Agents/officers then continued to conduct mobile surveillance of Alan LITTLE driving the Durango with CLYBURN in the passenger seat as they traveled surface roads from the McDonald's back to Biscoe, NC. During this time frame Alan LITTLE continued to conduct counter surveillance techniques.

65.     Upon arriving in Biscoe, NC Alan LITTLE stopped the Durango in the parking lot of the Ready Mart located at 211 S Main Street, Biscoe, NC. Upon stopping Agents/officers observed CLYBURN exit the Durango and enter the Ready Mart. After a couple minutes CLYBURN returns to the Durango.

66.     Agents/officers then conducted mobile surveillance of Alan LITTLE driving the Durango with CLYBURN in the passenger seat until they arrived and parked at Biscoe Auto located at 701 S Main Street, Biscoe, NC. Upon arrival at Biscoe Auto agents/officers pulled in behind Alan LITTLE and CLYBURN. Alan LITTLE and CLYBURN exited the Durango and started walking toward the entrance of Biscoe Auto at which time agents/officers stopped and detained Alan LITTLE and CLYBURN. While detaining Alan LITTLE a gray Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone with a clear phone case (**Device 1**) and a Samsung SM-F936U with serial number RFCT90N2XDZ marked on the exterior of the phone in a black case with a clip on it (**Device 2**) were located on Alan LITTLE's person.

67.     While placing Alan LITTLE in handcuffs agents/officers observed that little had a bag of green leafy substance believed to be marijuana that was at his feet. Agents/officers ensured there were no additional people inside the Durango. When doing so agents/officers observed the odor of marijuana emanating from the interior of the Durango.

19

68.     Based on the events of this case prior to January 17, 2023, detailed above in conjunction with the events of January 17, 2023, leading to the stop and detention of Alan LITTLE and CLYBURN agents/officers conducted a probable cause search of the Durango. During the search of the Durango agents/officers located neon green and orange towels in the trunk area of the Durango. These were the same towels observed being removed from the boxes, and placed in the Durango earlier during surveillance. The below photo was taken upon opening the trunk area of the Durango.



Case 1:23-mj-00061-JEP   Document 1   Filed 02/02/23   Page 21 of 40

## Execution of North Carolina State Search Warrant at 503 John Street, Biscoe, NC on January 17, 2023

69.     Following the search of the Durango agents/officers applied for a search warrant for 503 John Street, Biscoe, NC where agents/officers observed CLYBURN bring the contents of Subject Packages 14, 15, and 16. North Carolina Superior Court Judge Webb subsequently signed a search warrant authorizing the search of 503 John Street. Agents/officers then executed the search warrant at 503 John Street.

70.     At 503 John Street agents/officers detained two residents, Jkari COLLINS and Nia CAGLE. Upon searching the residence agents/officers located and seized approximately ¾ of a pound of green leafy substance suspected to be marijuana, a clear plastic bag of white substance which field tested positive for fentanyl, blue pills pressed with the mark M30 which field tested positive for fentanyl, an AK-47 pistol, and a shotgun. Additionally, agents/officers located a dark gray Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone with no phone case (**Device 3**) located on the person of Jkari COLLINS, an Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone in a gray case (**Device 4**) located on the person of Nia CAGLE, and an Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone in a black case with neon green trim (**Device 5**) located on the person of Jkari COLLINS.

## Knock and Talk at 205 S Bilhen Street, Troy, NC on January 17, 2023

71.     After conducting the search of 503 John Street, Biscoe, NC agents/officers conducted a consensual encounter with the residents of 205 S Bilhen Street, Troy, NC.

21

Agents/officers had previously identified 205 S Bilhen Street as the residence of Anthony BUTLER. Anthony BUTLER is the brother of Michael BUTLER and was believed by agents/officers to be a co-conspirator of Michael BUTLER and Alan LITTLE during the course of this investigation. Additionally, agents/officers observed CLYBURN exit Alan LITTLE's Durango and lost sight of CLYBURN near 205 S Bilhen Street during surveillance earlier the same date.

72.     Agents/officers approached 205 S Bilhen Street wearing vests with markings identifying them as police officers. Agents/officers knocked on the door and were greeted by Anthony BUTLER and Jasmine CAPLE. Agents/officer requested to speak with Anthony BUTLER who stepped onto the front porch and spoke with agents/officers voluntarily. CAPLE stated she would also speak with agents/officers after putting on more clothing. CAPLE walked out of sight, then return wearing additional clothing and stepped onto the front porch. Agents/officers explained to Anthony BUTLER and CAPLE why they were at 205 Bilhen Street and asked if anyone had given Anthony BULTER or CAPLE a bag of drugs to hide at their residence. Anthony BUTLER and CAPLE both stated no, then Anthony BUTLER offered for agents/officers to search the residence. Agents/officers confirmed by explicitly asking BUTLER and CAPLE for consent to search the residence to which both Anthony BUTLER and CAPLE consented.

73.     While searching the residence agents/officers asked Anthony BUTLER if he had a car. Anthony BUTLER's body language became tense and erratic. Anthony BUTLER's speech became accelerated. Anthony BUTLER quickly responded "my car?" "we don't have a car," "like a vehicle," "here at this apartment?" and other statements agents/officers could not

22

understand. Agents/officers pointed to a Honda Accord displaying NC License plate JJH9533, parked directly in front of 205 S Bilhen Street and asked if the vehicle belonged to Anthony BUTLER. Anthony BUTLER took a long pause then stated it was CAPLE's.

74.     Agents/officers walked to the living room where CAPLE was sitting on the couch. CAPLE was polite and jovial during conversation about searching the residence. Agents/officers asked CAPLE if the Honda Accord was hers. Upon hearing the question CAPLE's demeanor immediately changed. The tone in CAPLE's voice became short and tense. CAPLE stated "why?" in a short-irritated tone. Agents/officers asked if they could search the vehicle. CAPLE responded by telling agents/officers that the car was CAPLE's vehicle and Anthony BUTLER had nothing to do with the vehicle. Agents/officers asked again to which CAPLE stated "no you are not searching my car."

75.     At that time agents/officers requested a K9 officer respond to 205 S Bilhen Street and conduct a free air sniff around the Honda Accord. The Honda Accord was parked in an apartment parking lot that had access to the general public from the roadway, and was not secured by any gate or fence. The K9 officer arrived on scene and began conducted a free air sniff of the vehicle. While attempting to conduct the free air sniff Anthony BUTLER repeatedly walked into the path of the K9 and the K9 officer while yelling at the K9. Anthony BUTLER was warned by local officers several times not to interfere with the K9. Anthony BUTLER then continued to interfere with the K9 at which time local officers detained Anthony BUTLER for obstruction, which is a violation of North Carolina state law. Anthony BUTLER was placed in handcuffs and placed in the rear of a Montgomery County Sheriff's Office marked patrol

23

vehicle. While placing Anthony BUTLER in the vehicle agents/officers removed a Samsung smart phone displaying IMEI: 359103254643140 (**Device 6**) from Anthony BUTLER's person.

76.    Upon completing the free air sniff the K9 officer stated the K9 gave a positive alert to the odor of controlled substances emanating from the vehicle. After the K9 gave the alert the Honda Accord was seized and transported to a secure area. Agents/Officers then applied for a search warrant for the vehicle.

77.    While handcuffed and in the patrol vehicle Anthony BUTLER requested to speak with one of the Agents/officers. The agent/officer asked Anthony BUTLER what he would like to speak about. Anthony BUTLER then stated "if you take that car and get a search warrant, you'll find what you're looking for." Agents/officers at that time seized Device 6 from Anthony BUTLER. Anthony BUTLER was released without incident.

78.    Affiant knows based on training, experience, and knowledge of this case that drug traffickers regularly communicate utilizing cellular telephones such as Device 6. Affiant knows based on the events of January 17, 2023, that if the Honda Accord did have the contents of Subject Packages 14, 15, and 16, then it would probable that Device 6 would have communications stored within the device related to the movements of these suspected drugs, and other activities conducted by Alan LITTLE and his co-conspirators.

### Execution of North Carolina State Search Warrant on the Honda Accord

79.    North Carolina Superior Court Judge Bridges signed a search warrant authorizing the search of the Honda Accord displaying NC License plate JJH9533. Upon executing the search warrant agents/officers located a backpack in the trunk of the Accord. Inside the backpack

was a Glock 21 handgun, two digital scales, two clear plastic bags containing several smaller plastic bags containing white powdered substance believed to be fentanyl, and four hard brick shaped objected each weighing approximately one kilogram containing white powdered substance believed to be fentanyl. Each of the brick shaped objects were vacuum sealed and wrapped in cellophane. Based on affiants training, experience, and knowledge of this case affiant knows this method of packaging is common for kilogram quantities of drugs packaged for transportation and distribution by drug traffickers. Additionally, agents/officers observed that one of the brick shaped objects was wrapped in a neon green towel, and one of the brick shaped objects was wrapped in a neon orange towel. Agents/officers observed these towels matched the towels located in the rear of the Durango and the towels that CLYBURN removed from Subject Packages 14, 15, and 16. Below is a photograph showing the contents of the backpack upon opening the trunk.

25



80.     Based on affiant's training, experience, and knowledge of this case affiant knows that drug traffickers regularly communicate utilizing cellular telephones, such as the **TARGET DEVICES**, to coordinate drug transactions with drug customers and drug sources of supply.

81.     Based on the information provided in this application Affiant submits there is probable cause to believe the **TARGET DEVICES** will contain evidence of drug trafficking conducted by Alan LITTLE and co-conspirators both known and unknown to law enforcement. The **TARGET DEVICES** are currently in storage at the Stanly County Sheriff's Office in Albemarle, NC. In my training and experience, I know that the **TARGET DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in

26

substantially the same state as they were when the **TARGET DEVICES** first came into the possession of the Stanly County Sheriff's Office.

<h2 style="text-align:center">TECHNICAL TERMS</h2>

82.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

83.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

84.     There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

    a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

28

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

85.  *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the

29

storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

86. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

87. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

88. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the TARGET DEVICES described in Attachment A-1 though A-6 to seek the items described in Attachment B.

31

## REQUEST FOR SEALING

89.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

/S/ Charles A. Vill
Charles A. Vill
Special Agent
Drug Enforcement Administration

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this ___2___ day of February, 2023, at ___2:19___ a.m./p.m.

Subscribed and sworn to before me
on February 2, 2023:

The Honorable Joi Elizabeth Peake
U.S. Magistrate Judge

32

## ATTACHMENT A-1

The property to be searched is as follows:

a. DEVICE 1: A gray Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone with a clear phone case. A photograph of Device 1 has been attached below for further identification.



## ATTACHMENT A-2

The property to be searched is as follows:

a. DEVICE 2: A Samsung SM-F936U with serial number RFCT90N2XDZ marked on the exterior of the phone in a black case with a clip on it. A photograph of Device 2 has been attached below for further identification.

 

2

## ATTACHMENT A-3

The property to be searched is as follows:

a.  DEVICE 3: A dark gray Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone with no phone case. A photograph of Device 3 has been attached below for further identification.



3

## ATTACHMENT A-4

The property to be searched is as follows:

a. DEVICE 4: An Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone in a gray case. A photograph of Device 4 has been attached below for further identification.



4

## ATTACHMENT A-5

The property to be searched is as follows:

a. DEVICE 5: An Apple iPhone with no serial number or specific identifiers marked on the exterior of the phone in a black case with neon green trim. A photograph of Device 5 has been attached below for further identification.



5

<u>**ATTACHMENT A-6**</u>

The property to be searched is as follows:

a. DEVICE 6: A Samsung smart phone displaying IMEI: 359103254643140. A photograph

of Device 6 has been attached below for further identification.

 

6

## ATTACHMENT B

1.    All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 846 and 841 (possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same); and 21 U.S.C. § 843(b) (use of a communications facility to commit a felony) and involve Alan LITTLE, Michael BUTLER, Anthony BUTLER, Jkari COLLINS, Damien CLYBURN, and other co-conspirators both known and unknown:

    a.   Electronic communications with co-conspirators both known and unknown;

    b.   lists of customers and related identifying information;

    c.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e.   all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

7